CENTRAL TRUST CO. v. OHIO SOUTHERN RAILROAD CO. ET AL.

CONSOLIDATED LEASE NOT A SALE—PREFERENCE OF LESSORS.

> Where the court appoints receivers of the property of a railroad company, and directs them to join the company in the execution of a lease, consolidating former leases of rolling stock, the terms of which have not yet expired, the purpose and provisions of which consolidated lease are to provide a lower monthly rental and extend the period of the leases—but leaving the title to the rolling stock in the lessors, with conditions of forfeiture for non-payment of the rentals and other breaches of the covenants, such consolidated lease is not a sale of the rolling stock to the receivers, and the lessors are entitled to preference over the bonded indebtedness of the railroad company, only for the rentals which accrue after execution of such consolidated lease and during the existence of the receivership.

PRICE, J.

This is the case of The Central Trust Company against The Ohio Southern Railroad Company and other defendants, among whom are the defendants known as "The Car Trust Corporations."

The property of The Ohio Southern Railroad Company has been sold and the controversy before the court on appeal from the lower court, is between The Central Trust Company, of New York, and what will be termed "Car Trust Corporations," over the proceeds of the sale and their distribution.

The Central Trust Company of New York is the holder of two mortgages or deeds of trust on the property of the Railroad Company; one was created on the twenty-third day of May, 1881, and was made to secure the payment of the sum of four million dollars of bonded indebtedness and the accruing interest, and the second mortgage was executed on the first day of October, 1889, on the same property to secure a bonded indebtedness of two million dollars and the accruing interest thereon. These mortgages are in the form of trust deeds, and their execution was duly authorized by the stockholders and directors of the Railroad Company, and were duly recorded. The Railroad Company made default in the conditions of these instruments and failed to pay the indebtedness as it matured, and The Central Trust Company has obtained a decree of foreclosure and order of sale on each of its said liens. It claims that by the terms of the trust deed of May 23, 1881, it has the first and best lien on all the property of the Railroad Company, and by virtue of the second deed of October 1, 1889, it has the next best and second lien on the property, and it now asks that distribution be made accordingly, except, that certain outlays and other claims growing out of the receivership may be paid, but all such questions are not in contest here, and we give them no further attention, as counsel seems to agree upon their disposition.

The companies, termed The Car Trust Corporations, claim a precedence over the liens created by the said trust deeds in the sum of about six hundred and eighteen thousand four hundred and forty-six dollars, and their demand is founded upon certain car leaseses—three in number—and especially what is called a "Consolidated Lease" of December,

1895, coupled with the findings and order of the court of common pleas, authorizing the receiver to execute such lease, which order appears under date of January 6, 1896. The lower court construed the consolidated lease and the order authorizing the receiver to execute it, to be a sale of the rolling stock to the receiver for said sum of $618,446 and that the amount is the first lien on the proceeds of the sale. From this decision the plaintiff has appealed to this court.

The conditions and terms of these various leases and the order of the court, are of first importance, and a thorough understanding and proper construction of them will free the case of all difficulty.

In November 1892, The Bristol and South Wales Railway Wagon Company and two other companies named, entered into a contract with The Ohio Southern Railroad Company whereby they leased to the latter company one thousand cars, the tenancy to commence from the first day of February, 1893, and end on the first day of February, 1900—a term of seven years, at a yearly rental, but payable in eighty-five monthly installments, for which rental warrants, coupons or notes should be made.

The first party to this contract is designated as "Lessors" and the railroad company as "the tenant." These cars were to be made by a company named, and it stipulated that the cars when made and ready for delivery shall become the absolute property of the lessors respectively as provided. Each car was to bear upon it a cast iron plate on which should appear the name of the lessor as the owner of such car, and such other marks or insignia of ownership in such lessor as it, or its agent, at any time may see fit to use; and such cars should be numbered as directed by the schedule of lessors endorsed on back of the lease.

The consideration to be paid by the Railroad Company for the use of the cars, is called rent, in the contract, and in all its provisions the parties are described as lessors on one side and tenants on the other. The tenants were to make all repairs, and on notice from lessors or their agent, the Railroad Company, tenant, was obliged to make repairs, and the plate or other insignia of ownership must be kept on each car at all times during said tenancy as the lease reads, " for the purpose of making the ownership publicly known ; " if the plate should be defaced or·lost the tenant should restore it at once.

By another provision, the tenant is prohibited from assigning, or underletting said cars, without consent of the lessors, and the tenants shall insure and keep up the insurance ; and the tenant is forbidden the making of any alterations in any car without lessors " to whom the car belong consents thereto."

If default is made in payment of rent, and· it is not paid within seven days after demand for the same in the form set out, or if the tenant by any means suffers or allows any of the cars (except for interchange of traffic) to pass out of its possession without the written consent of lessors, or suffer the name, plate or other insignia of ownership of lessors to be removed or defaced, the lessors, or either of them, or their agent, may demand in writing the delivery of the cars, and the tenant agrees that within thirty days from the receipt of such demand, to deliver up said cars on its road at such place as may be designated.

By the 14th clause, it is provided, that in consideration of such several eighty-five payments during the term provided for, and all other sums due thereunder and interest due thereon " and the same being fully paid to the lessors, they, the lessors, will at the expiration of the said term of seven years herein provided for, sell said cars to the tenant as

Trust Co. v. Railway Co. et al.

follows for the sum of ten cents per car in United States gold coin *
* * and upon such payment and if promptly made, time being the
essence thereof, that then said rolling stock, as set out in the schedule
endorséd thereon, shall be and become the absolute property of the ten-
ant." * * *

There are other stipulations in the instrument, but they are not
important here; but taking it altogether, it is a lease with the right to
buy and sell at the close of the term of ten cents per car in gold, if all
rents and other dues shall have been then fully paid. But if no sale and
the parties cannot agree as to the condition of the cars, the difference
should be left to arbitration, but the tenant is liable for rent until the
acceptance of the award.

The other two leases are very much like the first. By one, two hun-
dred cars are leased; by the other, five hundred and fifty cars. One is
for seven years from April 1, 1893. The terms of the other is seven
years commencing March 1, 1893. The terms of rental on each are pro-
vided; the ownership in the lessors of the cars clearly stated, and in
each it is provided, that any modifications as to the payments or other
matter, shall not affect the whole amount for the term or effect the title
of the lessors in the property. There are other provisions guarding
carefully the title in the lessors. There is a clause which, in certain con-
tingencies of non-payment, authorizes the lessors to take possession of
the cars and sell the same and apply the proceeds on rentals, and at the
close of each of the latter two leases, there is a right to sell the cars, if
all the arrears shall be promptly paid.

In December, 1895, after the railroad property passed into the charge
of a receiver, another instrument was executed, which is known as a
" consolidated lease," and it is headed a " supplement to lease 82," (The
first one above noticed), and leases Ka and Kb, in which all the lessors
in the first leases join, and it contains many features similar to those in
the originals. The names of the first parties are designated as "lessors,"
and the other party " The Ohio Southern Railroad Company"and Joseph
R. Megrue and Nelson E. Matthews as receivers of said Railroad Com-
pany acting in obedience to an order of the court of common pleas of
Allen county, state of Ohio, made and entered the sixth day of January,
1896, in a suit now pending in said court entitled *Rousculp* v. *The Ohio
Southern Railroad Company* herein called " the tenants."

This consolidated lease recites the failure of the Railroad Company
to pay the rentals as they became due on each of the original leases; and
recites the existence of the receivership and that the receivers were with-
out funds to pay the rentals, and that neither the Railroad Company or
the receivers were able to pay the current rentals in full as they are now
reserved, without embarrassment to the operation of the road; and fur-
ther recites that " the receivers have requested the lessor to modify the
terms of the said several existing leases so as to extend the payments
due under the terms thereof over a longer period of years than is herein
provided, and to reduce the amount of the monthly rentals as therein
reserved; but not to abrogate the said several leases nor to modify or
change the force and effect thereof, except as aforesaid in respect to the
amount of monthly payments and the extension of the dates when they
shall fall due respectively."

It is further stated that the court has authorized the receivers to join
the railroad company in the execution of the new lease; and it then pro-
vides that the tenancy shall commence from the seventh day of Novem-

ber, 1895, and end on November 7, 1905, a term of ten years. The 1750 cars are brought within the consolidated lease, and the rentals are divided into one hundred and twenty monthly payments to be represented by warrants and coupons.

It is stipulated in the 5th clause, "that at the end of the tenancy, by expiration of the term or otherwise, the said tenants shall and will deliver up and surrender said cars to the lessors respectively as aforesaid, or their agent, in proper and complete repair and working condition, less the fair wear and tare, (unless the cars shall be purchased as provided in clause 11) at Springfield, Ohio."

And in case of a disagreement between either lessor and the tenants as to the condition of the cars at the end of the term, the same shall be arbitrated, etc., etc.

The 6th clause provides for repairs, and the 7th, the placing of the iron plate on each car to show the ownership of the lessors, and the same shall be kept on the cars, replaced if lost, etc.

The 8th clause forbids the underletting or transfer of the cars, and that the tenants shall pay the taxes and maintain insurance.

The 9th clause prohibits any alteration of the cars without consent of the lessors. By the 10th clause it is agreed that if default is made in payment of rental for a certain number of days after written demand therefor, or if the tenants allow the cars to pass out of their possession etc., the tenants shall within thirty days after the demand, "deliver up to the lessors or their agent each and every car at such place or places as may be designated;" or the lessors or their agent, "may seize, remove and take away the said cars or any of them whether loaded or unloaded, with or without process of law," and by writing put an end to this agreement.

By the 11th clause it is provided that in consideration of the one hundred and twenty payments during said time (ten years) and all other sums due, the lessors will sell said cars to said tenants for ten cents per car in gold coin, and on prompt payment, time being the essence, the rolling stock shall become the absolute property of the tenants.

The 12th clause is not of importance in determining the question before us.

The 13th clause, however, provides, "that this agreement is made upon the express condition that it shall not operate as a cancellation of any of the agreements recited in the preamble to this agreement, nor so as to defeat or modify any of the rights, property or interest of the lessors or any of them, in and to the said railway cars as the same existed under the terms of said several agreements, except as to the amounts and dates of the monthly rentals; it being understood and agreed that it is the sole intent and purpose of this present agreement, to reduce the amounts of the monthly rentals as fixed by the terms of said several agreements and to extend the dates upon which monthly rentals are to be paid over a longer term of years. * * *"

This is the instrument which the court of common pleas authorized the receivers to execute, and what is it? The parties to it call it a lease. They denominate themselves as lessors and tenants respectively, and all the wording and all clauses are such as are fittingly used to make up a lease. The three original instruments which have all the characteristics of leases, were not abrogated or supplanted by the new instrument. On the contrary, it is expressly stipulated, that they remain in full force and effect with all the powers therein conferred on the lessors, and that the sole and only purpose of the new contract was to reduce the amounts of

monthly payments and extend their date over a longer period of time. The same conditions for forfeiture; for non-payment; for allowing the cars to pass out of the possession of the tenants; for not maintaining the plate on each car showing the ownership of lessors; which were in the original contracts are in the new. All the ligaments by which the "Car Trust Corporations" held the rolling stock in the old contracts, are embodied in the new. And nowhere in it is there the privilege or right to buy and sell until at the end of the term, when all rentals and other dues must be fully satisfied. Not until that period could the Railroad Company, or the receivers demand and enforce a transfer of title to themselves and terminate the covenants of the leases. And not until that period could the lessors rightfully demand payment of more than the monthly rentals and such other dues as may arise under the contract. The parties have carefully and clearly postponed any transfer of title to the end of the term, and then it is dependent upon all payments being made. Not even at the end of the term, and when all payments have been made, is the tenant bound to take the cars. The tenant has an option to do so and may decline, and then, if the parties cannot agree as to the condition of the cars which are to be surrendered, arbitration shall be resorted to, to settle all differences, pending which rentals still accrue.

If there can be a single element of sale gathered from either of these contracts, it is of a conditional character, a conditional sale, with title all the time remaining in the "Car Trust Companies," until the last dollar has been paid according to the agreement, and also every other condition complied with.

It is claimed, that when the receivers took charge of the Railroad, the lessors had been paid on rentals a sum equal to a considerable part of the total value of the cars, and that the cash price on delivery of the cars was above ordinary rentals and should be considered as a partial payment on a purchase price, and that the parties contemplated a sale and purchase in the manner in which cash and monthly payments were provided for in the contracts.

It may be and we might assume that when the "Car Trust Corporation," known as lessors, entered upon negotiations with the Railroad Company for the manufacture and use of the rolling stock, they calculated the total cost of the cars to be furnished by them respectively, and took that sum into account in fixing a basis from which to compute what they desired as payment on delivery of the cars and the monthly rentals, and counted that all such payments having been made when the end of the term should come, they would be fully compensated for their investment, and interest thereon, so that the cars could become the absolute property of the Railroad Company. This seems to be the plan adopted in framing the terms of the consolidated lease.

What change does this fact work in the construction of the contracts? It is not uncommon that a landlord may fix the rentals of his property at a certain per cent. on each dollar invested in the leased property. He may go further, if he can procure such a tenant, and add to the monthly or yearly payments, a sum which when it is added to the rentals at the end of the term, will aggregate the value of the property and a rate of interest thereon during the term, on payment of which the property will pass to such tenant. Parties may agree to such terms and if complied with, the property may thus be acquired. But the title remains in the landlord until the end of the term, and it may be of

essence in such contract, that the payments shall continue during the term, and not be paid in advance. The tenant would have no right, unless so written, at the end of half his term, to advance all the remainder and compel the delivery of a deed, because the payments have been fixed otherwise and the tenant would have no right to break up and terminate an arrangement, which might defeat the very purpose of the landlord in entering into such a contract. Of course the death of one or other of the parties, or some such event might happen, as would require a court of equity to intervene in order to protect the rights of parties.

It is claimed here, that court of equity has intervened on account of the insolvency of the Railroad Company, whereby its property passed into the temporary control of the court, and its receivers, and that the court made an order, when it authorized the receivers to join in the execution of the new contract of December, 1895, which modifies the stern provisions of the former leases, and takes the case we have out of the control of such provisions.

Ordinarily and generally, insolvency and inability to pay, does not abrogate or rescind a contract; and we think it a safe and wholesome doctrine that courts are not to be used to sanction the destruction of contracts, because of insolvency and inability to pay; and we think the court of common pleas, was not so used in making the order of January 6, 1896, wherein the receivers were authorized to join the Railroad Company in the execution of the consolidated lease.

Counsel for the "Car Trust Corporations" claim much for this order, and the fact that its entry was consented to by the Central Trust Company, and we will examine it.

After reciting the date and names of parties to the original contracts, the entry proceeds to find, that all the rolling stock described in said leases, "is essential to the effective operation of the railroad and the defendant Railroad Company, and that the loss of any portion of the said equipment would impair the earning powers of the said company, and that the prices for all of the said equipment under the respective leases, as determined by the amount remaining due thereon, are less than similiar equipment would cost if purchased at the present market prices; and it further appearing to the court, that under the terms of the three several leases, there was due on the seventh day of November, 1895, the sum of $189,270.04 in overdue rentals, with interest thereon, for the use of the rolling stock leased by the said three leases in the aggregate; and it further appearing, that including said sum of $189,270.04 there will remain due under said leases the aggregate sum of $618,456.04; and it further appearing that the said car trust corporations have agreed to make a supplemental agreement for the said rolling stock covered by the said several leases to the said Railroad Company, and the receivers thereof, at the valuation on the seventh day of November, 1895, of the capital sum of $618,466.04 for the term of ten years upon monthly rental of $6,559.79 for one hundred and twenty consecutive months, with a provision nevertheless that in order to meet the financial requirements of the said Railroad Company and its receivers and of the other parties hereto, the said car trust corporation shall for the first forty-two months of the said term of the new consolidated lease, accept the sum of $6,-000 00 per month as partial payments of said monthly rental of $6,559.79, and shall extend the remaining balance of $559.79 per month over the remaining seventy-eight months, so that the monthly rentals for the remaining seventy-eight months shall be $6,943.68 per month; now

therefore it is ordered, adjudged and decreed, that the said The Ohio Southern Railway Company, defendant herein, and the said Joseph R. Megrue and Nelson E. Matthews, the receivers thereof, are authorized and instructed to make and execute a new consolidated lease or car trust agreement with the said car trust corporations, based upon the amount due and to become due, under the term of the said several existing agreements, which sum is ascertained and agreed to be the sum of $618,-466.04, which consolidated agreement shall be for the term of ten years from November 7, 1895," etc.

The order proceeds to state that the monthly payments shall be $6,-000.00 for the first forty-two months and $559.79 accruing on each of those months in addition to the $6,000.00, to be apportioned over the remaining seventy-eight months. The consolidated agreement contains the same provisions as to the payment of rentals stated in the other.

There is no authority in this order to purchase these cars. It is an order authorizing and directing the receivers to execute the consolidated lease. We have seen that it is a lease, and if the lower court intended to change its character from a lease or conditional purchase and sale, there was the opportunity to so order, and if such an order had been assented to by the Central Trust Company, we would have a different question. No purchase was authorized, none contemplated, and none made.

The 3rd finding of the court of common pleas, preceding the order of January 6th, shows that a purchase was not directed, nor can the power of purchase be implied from it. Every line in that order negatives the idea of a purchase and sale. And that nothing should remain in doubt, another portion of the order speaks as follows : "It is further ordered, adjudged and decreed, that the new consoldated agreement or lease shall not operate to abrogate or terminate the said three several existing agreements or leases between the said car trust corporations and the said Railroad Company, but shall operate only so as to extend the time within which the payment for the rolling stock covered by said leases shall be fully made and to vary and reduce the amount of the several monthly payments so as to conform to the terms of this order as above set out." By this paragraph the court gave a construction of the new consolidated lease and the language is too plain to excite dispute. This rolling stock is still under lease and there is no provision in it making the payments of rentals a lien on anything, much less upon the railroad and other property of the Railroad Company. The car trust companies, for their protection retained title in the cars, hedged about with the most stringent provisions for their repair and proper use, with a condition of forfeiture if the conditions should be violated. These conditions and provisions were yet in force and none of them have been removed by the order of January 6, 1896.

It has been presented to us in argument, that the claim to preference by the "car trust corporations," over the liens of the trust deed on the proceeds of the sale, is founded on equitable principles, and that, under all the existing circumstances, it is but just, that their claim should have preference. It is urged that the cars are on the line and will be needed by the purchaser of the road and its property and and so on. The latter position is but begging the question. As to the claim being founded on principles of equity, let us consider for a moment. We are asked to treat the leases as a sale, which they are not, and we are asked to work some

mysterious transformation of the contracts and rights of the parties so that the unintended shall happen, and that contracts which are leases executed several years after the trust deeds were recorded, shall be now a first lien on the property of the Railroad Company by decree of the court. No satisfactory reason for this demand has been presented. Equity does not counsel or suggest violation of contracts or the invasion of contract rights. To grant the demand now made would accomplish both. The Ohio Southern Railroad Company is insolvent and unable to buy. The receivers have not purchased, and we are now asked to compel the Central Trust Company, not a party to either contract to unwillingly purchase and pay for these cars, not only what may be now due, but in advance, what would mature during the balance of the term of their six years. The car trust companies are now willing to sell and have asked the court to furnish a purchaser. Such is the legitimate effect of the order we are requested to make. There is no ground in equity, surely none in law for it to rest upon. It cannot be made.

Again, it has been argued, that counsel for the Central Trust Company was present at the time the railroad property was sold, and that the Masters who conducted the sale, read and announced to the bidders, that the court of common pleas had ordered the claims of the "Car Trust Corporations" to be recognized in the sale as preferred and that it was announced that the purchaser would get the cars as a part of the sale etc.

What of it, if true? It is from the order of distribution that we have the case on appeal; but while that order was in force, although still contested by The Central Trust Company, it would have been imprudent, if not in contempt of that order, for counsel to have interferred at the sale and contradicted the statement made by the officers of that court. Surely no one will insist for a moment that the silence of counsel on that occasion works an estoppel of their contention here.

On the whole case, we are unanimous of the opinion, that there is no equity in the claim of preference of the "car trust corporations," and we find against them on the issue presented to us; they have no lien and therefore no precedence over the appellant in the proceeds of sale, except as to the rentals due during the receivership.

As we have seen, the consolidated lease of December, 1895, provided that the term of ten years from November 7, 1895, at a monthly rental of $6,559.79 per month, but to meet the financial requirements of the Railroad Company, and its receivers, the Car Trust Corporations agreed to accept for the first forty-two months the sum of $6,000, as partial payment of said monthly rental and extended the remaining sum of $559.79 per month over the remaining seventy-two months.

We, therefore order, that as a preference to the bonds secured by the first and second mortgages of the Central Trust Company, there be paid from the proceeds of the sale of the railroad property the sum of $6000.00 per month from May 8, 1896 (the date of the last payment of rent made by the receivers), until the receivers are discharged, with six percent. on each monthly installment from the day it matured; and also with like order of preference, that there be paid $559.79 per month at its present worth for each month commencing on the seventh day of November, 1895, continuing until the discharge of the receivers. The receivers, from proceeds of sale, shall cause to be made all repairs of cars called for by the consolidated lease of November 7, 1895, and also restore all cars which have been destroyed, which is also provided for in said lease.

This cause is remanded to the court of common pleas for the execution of this decree.

*Doyle & Lewis*, of Toledo, O., for plaintiff.

*Cole & Potter* of New York ; *Judge Olds* of Columbus, O., for defendants.